# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John A. Nordberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 9879 | **DATE** | 5/30/2002 |
| **CASE TITLE** | Rayford A. Gill vs. John Ascroft | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter memorandum opinion and order. For the foregoing reasons, the government's motion to dismiss is DENIED, and the Petitioner's petition for a writ of habeas corpus/motion for a preliminary injunction are GRANTED. The government is directed to provide the Petitioner with an individualized bond hearing before an immigration judge within 120 days of the date of this order. The effect of this order will be stayed during the pendency of any appeal. (14-1,11-1)

(11) ■ [For further detail see order attached to the original minute order.]

| ✗ | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | MAY 3 1 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | U.S. DISTRICT COURT CLERK | | 17 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 02 MAY 30 PM 3:50 | | |
| | | FILED-GB-TB | date mailed notice | |
| TP | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RAYFORD A. GILL | ) |
| Petitioner, | ) |
| | ) No. 01 C 9879 |
| v. | ) |
| | ) HONORABLE JOHN A. NORDBERG |
| JOHN ASHCROFT, Attorney General of the United States, et al, | ) |
| Respondents. | ) |

**MEMORANDUM OPINION AND ORDER**

Petitioner Rayford Gill has filed this action against Respondents John Ashcroft, the Attorney General of the United States, and Brian Perryman, District Director of the Immigration and Naturalization Service ("INS"), seeking a writ of habeas corpus. Gill is in INS custody pursuant to the mandatory detention provisions of 8 U.S.C. § 1226(c), during the pendency of his removal action. He maintains that due process entitles him to an individualized bond hearing to assess whether his continued detention is warranted. Before the court are Petitioner's motion for an preliminary injunction directing the Respondents to provide him with a bond hearing, and Respondents' motion to dismiss the petition.

**BACKGROUND**

Petitioner is a native of Belize with the status of legal permanent resident (LPR) in the United States. On December 8, 2000, Petitioner was convicted of possession of cocaine in Illinois state court and sentenced to probation. On September 5, 2001, the INS issued a Notice to Appear, charging that the Petitioner was removable because he was convicted of a drug offense, 8 U.S.C. § 1227(a)(2)(B)(i). Petitioner argued that his Illinois disposition was not a

"conviction" for purposes of the immigration statutes. Petitioner maintained that first time drug offenders are not removable if their state disposition would not be a conviction under Federal law (Federal First Offender Act), based upon the Ninth Circuit's decision in *Lujan -Armendariz v. INS*, 222 F.3d 728 (9th Cir. 2000). On November 20, 2001, the immigration judge found the charge sustained and ordered Petitioner deported. Petitioner filed an appeal to the Board of Immigration Appeals; his appeal is currently pending. Petitioner remains in INS custody, as INS deems him ineligible for bond, pursuant to the mandatory detention provision in 8 U.S.C. § 1226(c). Petitioner seeks habeas relief on the grounds that the mandatory detention provisions violate substantive and procedural due process. Petitioner argues that he is entitled to an individualized bond hearing to assess whether keeping him in custody is necessary on the basis of any danger that he presents to the community or the risk of his flight. Petitioner asks the court to declare the statute unconstitutional or unconstitutional as applied, and order his release on appropriate conditions or order INS to provide him with a bond hearing. Petitioner echos these arguments in his motion for a preliminary injunction.

The government maintains that this case is controlled by the Seventh Circuit's holding in *Parra v. Perryman*, 172 F.3d 954 (7th Cir. 1999), and, as such, Petitioner's continued detention is proper and his petition should be dismissed. Petitioner argues that *Parra* has been fatally undermined by the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001), and that the overwhelming weight of recent authority concludes that the mandatory detention provision violates due process. He argues that his liberty is a fundamental right and the government's deprivation of that right should be subject to strict scrutiny. He further argues that

the mandatory detention policy is not narrowly tailored, as it presumes all aliens are flight risks and present danger to the public.

## LEGAL STANDARDS

### Injunctive Relief

In deciding whether to grant injunctive relief, a court must consider four criteria: (1) whether plaintiff has a reasonable likelihood of success on the merits; (2) whether the plaintiff will have an adequate remedy at law or will be irreparably harmed if the injunction does not issue; (3) whether the threatened harm to the plaintiff outweighs the threatened harm the injunction may inflict upon the defendant; and (4) whether the granting of the injunction will harm the public interest. *Plummer v. American Institute of Certified Public Accountants*, 97 F.3d 220, 229 (7th Cir. 1996).

### Motion to Dismiss

"[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-6 (1957). In evaluating a motion to dismiss, the court should take all the allegations of the complaint as true and grant the plaintiff the benefit of all inferences. *Caremark, Inc. v. Coram Healthcare Corp.*, 113 F.3d 645, 648 (7th Cir. 1997).

### Due Process

"The substantive due process guarantee prevents the government from engaging in conduct that 'shocks the conscience' or interferes with rights 'implicit in the concept of ordered liberty.'" *Vang v. Ashcroft*, 149 F.Supp.2d 1027, 1034-5 (N.D. Ill. 2001)(internal cite omitted). "[T]he government may not infringe a person's fundamental liberty interests, regardless of the

process provided, unless it narrowly tailors the infringement to serve a compelling state interest."
*Id.* at 1035 (citing *U.S. v. Salerno*, 481 U.S. 739, 748 (1987). Whether an immigration statute is narrowly tailored to serve a compelling interest is determined by assessing whether the infringement on liberty is an improper punishment or allowable regulation and excessive in relation to the goal Congress seeks to achieve. *Id.* at 1037.

"Procedural due process requires that government action which deprives a person of life, liberty or property be implemented in a fair manner." *Id.* at 1038 (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). A court should weigh three factors in evaluating whether the challenged process is constitutional:"(1) the private interest affected by the official actions; (2) the risk of an erroneous deprivation of the interest and the value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the fiscal and administrative burdens the additional or substitute procedural requirements would impose." *Id.*

### Immigration Detention Provision

Apprehension and detention of aliens
....
(c) Detention of criminal aliens
    (1) Custody
    The Attorney General shall take into custody any alien who–...
        (B) is deportable by reason of having committed any offense
        covered in section 1227(a)(2)(ii), (A)(iii), (B), (C), or (D) of this
        title,
        (C) is deportable under section 1227(a)(2)(A)(i) of this title on the
        basis of an offense for which the alien has been sentenced to a term
        of imprisonment of at least 1 year, or...
when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.
(2) Release
    The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of Title 18, that release

of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding. A decision relating to such release shall take place in accordance with a procedure that considers the severity of the offense committed by the alien....

8 U.S.C. § 1226.

Congress' stated regulatory justifications for the mandatory detention provision are:"(1) protecting the public from potentially dangerous criminal aliens; (2) preventing aliens from absconding during removal proceedings; (3) correcting procedures under which twenty percent of criminal aliens released on bond did not report for deportation hearings; and (4) restoring public faith in the immigration system." *Vang*, 149 F.Supp.2d at 1037.

## DISCUSSION

The merits of this case revolve around several issues.[1] First, the parties dispute whether the Seventh Circuit's decision in *Parra v. Perryman*, 172 F.3d 954 (7th Cir. 1999) is still good law in light of the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001). Second, the parties dispute whether, if *Parra* remains good law, the facts in this case are essentially undistinguishable from those in *Parra*. Third, the parties dispute whether, under the

---

[1]The government makes a half-hearted argument that Petitioner must exhaust his administrative remedies on the issue of whether his Illinois drug offense counts as a conviction for purposes of the immigration laws. This is obviously true, as far as it goes. It is also irrelevant, as Petitioner is not asking this court to rule on the merits of his immigration case, but is instead asking the court to address his mandatory detention pending the completion of the administrative process. Moreover, given the limited ability of administrative tribunals to address constitutional issues, exhaustion of remedies is generally excused in these circumstances. *Yanez v. Holder*, 149 F.Supp.2d 485, 489-90 (N.D. Ill. 2001).

5

specific circumstances of this case, the government can detain Petitioner without a bond hearing until the completion of his administrative case.

In *Para*, the Seventh Circuit held that §1226(c) is clearly constitutional. 172 F.3d at 958. The court noted that aliens "subject to §1226(c) have forfeited any *legal* entitlement to remain in the United States and have little hope of clemency." *Id.* (emphasis in original). The court further noted that the alien could end his detention by returning to his native land at any time. *Id.* "A criminal alien who insists on postponing the inevitable has no constitutional right to remain at large during the ensuing delay, and the United States has a powerful interest in maintaining the detention in order to ensure that removal actually occurs." *Id.* Any due process analysis was effectively academic; the liberty interest of an individual no longer entitled to live in this country, coupled with zero probability of error (alien conceded deportability), could not counterbalance the public interest in preventing flight by the alien. *Id.* The court concluded by noting that long before the most recent amendments to the immigration statutes, the court had held that "once deportation proceedings have begun an alien's detention is constitutional." *Id.*

*Zadvydas* dealt with the post-removal-period detention provision in 8 U.S.C § 1231, and an alien facing indefinite detention after the entry of a final order of removal due to his home country's refusal to accept him. *See* 533 U.S. at 683-4. The Court concluded that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. The Court further concluded that the statute had an implicit "reasonable time" limitation, and held that six months was a presumptively reasonable time for such detention. *Id.* at 701. Thereafter, if the alien provided good reason to believe that his removal was not

6

significantly likely in the reasonably near future, the government would have to provide sufficient evidence to rebut that showing to justify further detention. *Id.*

As noted by the government, *Zadvydas* is readily distinguishable from *Para*. The Supreme Court was addressing a different statute and different factual circumstances, based their decision on statutory interpretation rather than a broader constitutional principle, and specifically noted that detention pending a removal decision differed from post-removal-period detention because it has an obvious termination point. *See* 533 U.S. at 697. That said, the Supreme Court made numerous statements in the opinion that certainly appeared to have far broader applicability. First, the Court emphasized that "Freedom from imprisonment...lies at the very heart of the liberty that the Clause protects," and that aliens are protected by due process, even when they are subject to a final order of removal. *Id* at 690, 693-4. Second, that the provision's regulatory goals – preventing flight and protecting the public – did not warrant unlimited detention. *Id.* 690-693. The Court noted that flight risk was a nonissue, given that actual removal was unlikely. *Id.* at 690. Further, that preventive detention on the basis of dangerousness has passed muster "when limited to specifically dangerous individuals and subject to strong procedural protections." *Id.* at 690-1. On that score, the Court stated that an alien's removable status, standing alone, bears no relation to dangerousness. *Id.* at 691-2. Third, the Court rejected the government's argument that the alien's liberty interest was significantly diminished by his lack of legal right to remain "at large" in the United States; the Court noted that the choice was not between imprisonment and living at large, but imprisonment and strictly supervised release. *Id.* at 696.

7

Given that the cases are readily distinguishable, we would be reluctant to conclude that *Parra* had been fatally undercut by *Zadvydas*. Further, we need not opine on *Parra*'s continued viability, as the *Parra* court appears to have carved out a relevant exception. In *Parra*, the alien conceded his removability and his country of origin accepted the return of its citizens. 172 F.3d at 957. However, the court acknowledged that habeas relief may be appropriate for individuals that maintain that they are citizens, have not been convicted of a felony that authorizes removal, or who may be incarcerated indefinitely because they are citizens of countries that will not take them back. *Id.* Moreover, two recent district court decisions have concluded that *Parra* does not foreclose a habeas relief if the alien contests removability. *Vang*, 149 F.Supp.2d at 1036; *Yanez v. Holder*, 149 F.Supp.2d 485, 492 (N.D. Ill. 2001). We acknowledge that at least one court in this district has concluded that *Parra* is not restricted to cases in which the alien has conceded removability and status as an "aggravated felon." *See Kahn v. Perryman*, No. 00 cv 3398, 2000 WL 1053962 (N.D. Ill. July 31, 2000). The *Kahn* court reasoned that to hold otherwise would allow aliens to render *Parra* a dead letter by frivolously denying their removability/status as aggravated felons. *Id.* at *1. However, we believe that the instant case is more in line with *Yanez* and *Vang*, as Petitioner has a good faith basis (as evidenced by the split in circuit courts that have addressed it) for contesting removability.

As neither *Parra* or *Zadvydas* controls our analysis, the question becomes how are we to proceed? Fortunately, we need not write on a clean slate. Three courts of appeals have addressed cases such as ours in wake of *Zadvydas*. As Petitioner emphasizes, all three (plus a veritable flotilla of district courts) have concluded that the provision violates due process, and that an alien detained pending a final determination as to removability is entitled to an

8

individualized bond hearing. *See Hoang v. Comfort*, 282 F.3d 1247 (10th Cir. 2002)(substantive due process); *Kim v. Ziglar*, 276 F.3d 523 (9th Cir. 2002)(substantive due process); *Patel v. Zemski*, 275 F.3d 299 (3rd Cir. 2001)(substantive due process).[2] In addition, two Northern District courts reached this issue, post-*Zadvydas*, but with differing results. Judge Pallmeyer concluded that mandatory detention provision violated the substantive and procedural due process, as applied,[3] to aliens that contested their removability as aggravated felons. *See Vang*, 149 F.Supp.2d at 1037-9 (INS ordered to schedule bond hearings within 90 days). Judge Darrah reached the opposite conclusion, relying in part on *Parra. See Yanez*, 149 F.Supp.2d 485.

All the federal appellate courts which concluded there was a due process violation relied significantly on *Zadvydas*. In particular, all rejected the government's arguments regarding Congress' plenary authority over immigration, noting that the exercise of such power has constitutional limits. *Hoang*, 282 F.3d at 1257-8; *Kim*, 276 F.3d at 529-30; *Patel*, 275 F.3d at 307-8. Of considerable significance to the courts was the fact that LPR's have a right to remain in the United States, as "a matter of law, not grace," until there is a final order of removal. *Kim*, 276 F.3d at 528. *See also Hoang*, 282 F.3d at 1256. As such, an alien has a fundamental right to be free from physical restraint, triggering heightened scrutiny of the detention provision. *Patel*, 275 F.3d at 310. *See also Hoang*, 282 F.3d at 1257. The *Patel* court noted that while pre-

---

[2] A fourth appellate court, addressing an analogous issue for an alien with a final order of deportation, concluded that an alien can only state a claim under *Zadvydas* if he has been held for over six months and there is no significant likelihood of removal in the reasonably foreseeable future. *Akinwale v. Ashcroft*, No. 00-12655, 2002 WL 506330 (11th Cir. April 4, 2002).

[3] Our focus will also be on whether the statute violates due process as applied. Given the holding in *Parra,* and the daunting standard, establishing the provision's facial invalidity is highly unlikely.

final order detention is by definition, finite, the reasoning of *Zadvydas* was nonetheless applicable, as the alien could be detained for a significant period awaiting a final order of removal. *See* 275 F.3d at 309.

The courts also agreed that the provision was regulatory rather than punitive, as it was intended to served the legitimate, nonpunitive purposes of preventing flight by the alien and protecting the public from further criminal acts by the alien. *Hoang*, 282 F.3d at 1258-9; *Kim*, 276 F.3d at 530; *Patel*, 275 F.3d at 310. While differing in the particulars of their analysis, all the courts concluded that the detention provision was not narrowly tailored, as it presumed all the aliens were flight risks and/or presented danger to the public. *Hoang*, 282 F.3d at 1259-60; *Kim*, 276 F.3d at 535; *Patel*, 275 F.3d at 311- 313. *See also Vang*, 149 F.Supp.2d at 1037-8. *But see Yanez*, 149 F.Supp.2d at 492-3 (the provision does not violate substantive due process, because the mandatory detention provision was limited to certain criminal aliens, and detention of such aliens advanced the legitimate goal of protecting the public). As to their reasoning, the courts noted such things as the fact that 80% of aliens do appear for their court dates, that there is the possibility of relief from removal, and that the detention provision covers a broad range of criminal convictions that represent varying degrees of danger. *Hoang*, 282 F.3d at 1259-60; *Kim*, 276 F.3d at 531-4; *Patel*, 275 F.3d at 311-3. The courts were unanimous that due process required an individualized determination of whether detention was warranted. *Hoang*, 282 F.3d at 1260; *Kim*, 276 F.3d at 535; *Patel*, 275 F.3d at 312-3.[4]

---

[4]The *Kim* court also noted the inconsistency between §1226 and §1231, in that §1231 allowed bail for an alien with a final order of removal, when such an alien would have presumably a greater incentive to take flight. 276 F.3d at 535.

We find the reasoning of these cases persuasive. A legal permanent resident, at least if he contests his removability in good faith, has a fundamental liberty interest in his freedom from detention. *See generally Zadvydas,* 533 U.S. at 690, 693-4. In addition, we are inclined to agree with the *Patel* court that, while pre-order detention is by definition finite, given the BIA's notorious backlog, the *Zadvydas* Court's reasoning applies fully as well to our facts. Once we reach these initial conclusions, the outcome is inevitable, as the mandatory detention provision cannot be viewed as narrowly tailored to the Congress' goals. A blanket presumption that all criminal aliens are flight risks and/or present dangers to the community cannot withstand the most limited scrutiny. Given the range of criminal offenses[5] that can implicate §1226, the varying possibilities for relief that an alien may possess[6], and the varying personal characteristics, family ties, and community connections an alien may have, an individualized determination of flight risk and dangerousness is essential.

In sum, as the court is willing to accept Petitioner's contentions that unnecessary imprisonment yields irreparable harm, that Petitioner will prevail on his claim that the mandatory detention provision violates his substantive due process rights, that the BIA will not meaningfully address the bond issue (which deprives him of a remedy), that Petitioner's liberty interest outweighs the minimal burden holding a bond hearing will place on the government, and

---

[5] Crimes ranging from murder to comparatively modest theft offenses are all defined as "aggravated felonies" under the immigration statutes. *See* 8 U.S.C. § 1101(a)(43). As such, we cannot accept the *Yanez* court's conclusion that the provision is narrowly tailored because it applies to "criminal" aliens. *See generally Hoang,* 282 F.3d at 1260.

[6] Even "aggravated felons" may be eligible for certain relief. *See, e.g., INS v. St. Cyr,* 533 U.S. 289 (2001). *See also Kim,* 276 F.3d at 531-2.

11

that the immigration judge can set appropriate conditions (or deny bond entirely)[7] at an individualized bond hearing to accommodate the government and public's interest in aliens not taking flight or creating a danger, Petitioner is entitled to his requested preliminary injunction. In light of our conclusion regarding substantive due process, we need not address Petitioner's arguments regarding procedural due process.

## CONCLUSION

For the foregoing reasons, the government's motion to dismiss is DENIED, and the Petitioner's petition for a writ of habeas corpus/motion for a preliminary injunction are GRANTED. The government is directed to provide the Petitioner with an individualized bond hearing before an immigration judge within 120 days of the date of this order. The effect of this order will be stayed during the pendency of any appeal.

ENTER:

JOHN A. NORDBERG
Senior United States District Judge

DATED: May 30, 2002

---

[7] Particularly in these uncertain times, it cannot be overstated that the right to receive a bond hearing is far different from any entitlement to being released on bond. In appropriate cases, the answer to a request for a bond should be "no." *See Kim*, 276 F.3d at 538; *Patel*, 275 F.3d at 312.